# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

**Phillip Ley,**
 Plaintiff,

v.

**Turning Point USA, K-Von Comedy, and K-Von Moezzi,**
 Defendants.

**Case No. 25-13760**
 Hon. Shalina D. Kumar
 Magistrate Judge Kimberly G. Altman

---

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SUBJECT-MATTER JURISDICTION

Plaintiff Phillip Ley, proceeding pro se, respectfully submits this Response to the Court's Order to Show Cause (ECF No. 6). Plaintiff appreciates the Court's guidance and submits the following to cure the jurisdictional pleading deficiencies identified by the Court and to demonstrate that subject-matter jurisdiction exists under 28 U.S.C. § 1332.

## I. DIVERSITY OF CITIZENSHIP

At the time this action was commenced:

1. **Plaintiff Phillip Ley** is a citizen of the State of **Michigan**, domiciled in Michigan.

2. **Defendant K-Von Comedy** is a commercial business entity organized under the laws of the State of **California**, with its principal place of business in California, and operates publicly at [https://k-voncomedy.com](https://k-voncomedy.com).

3. **Defendant K-Von Moezzi** is a citizen of the State of **California**, domiciled in California, and is the owner and operator of the K-Von Comedy business and brand.

4. **Defendant Turning Point USA ("TPUSA")** is a nonprofit corporation incorporated in the State of **Arizona**, with its principal place of business in **Phoenix, Arizona**.

Complete diversity therefore exists between Plaintiff and all Defendants pursuant to 28 U.S.C. § 1332(a).

---

## II. PUBLIC, COMMERCIAL, AND SPONSORED NATURE OF THE CONDUCT

The conduct at issue did not occur in a private setting. The statements were made publicly and repeatedly by Defendant Moezzi while operating under his commercial brand **K-Von Comedy**, a professional entertainment enterprise marketed through *k-voncomedy.com*, ticketed live performances, monetized social media accounts, and promotional media.

Defendant Moezzi publicly represents K-Von Comedy as a widely viewed commercial brand, describing himself as an internationally known comedian with millions of monthly viewers and appearances on nationally recognized platforms including Netflix, NBC, Dry Bar Comedy, and TED. These representations are made by Defendant Moezzi himself for the purpose of promoting his business and securing paid engagements.

At the time the statements were made, Defendant Moezzi's K-Von Comedy social media presence prominently displayed affiliation and sponsorship with **Turning Point USA**, a nationally recognized political organization. These affiliations were visible to viewers and created the reasonable impression that Defendant Moezzi and K-Von Comedy were acting with organizational affiliation, approval, or endorsement.

Accordingly, the statements at issue constitute **public commercial speech**, amplified by political sponsorship, rather than private commentary.

## III. FACTUAL BASIS FOR PERSONAL AND REPUTATIONAL HARM

Plaintiff is an information technology professional who develops, manages, and supports websites and technical infrastructure for conservative-aligned individuals and organizations, including conservative media and values-based businesses. Trust, political credibility, and ideological alignment are essential prerequisites for participation in that professional ecosystem.

Defendant Moezzi, operating through **K-Von Comedy**, publicly and falsely claimed that Plaintiff was involved in multiple federal civil cases and criminal matters and repeatedly characterized Plaintiff as a "liberal" or "leftist." These statements were false. Plaintiff is a civic nationalist and conservative, and his professional reputation is closely tied to that identity.

The harm was exacerbated by several aggravating facts:

- The statements accused Plaintiff of serious legal and criminal misconduct.

- The statements misrepresented Plaintiff's political ideology within a politically sensitive professional market.

- Defendant Moezzi blocked Plaintiff's account, preventing Plaintiff from viewing or responding to public replies, while leaving the statements visible to third parties.

- Defendant Moezzi continued contacting Plaintiff privately after this action was filed, despite Plaintiff advising that legitimate legal counsel would instruct cessation of contact.

- Defendant Moezzi publicly mocked Plaintiff's hospitalization and medical treatment, including ridiculing images taken during medical care.

Plaintiff maintains a verified ("blue-check") social media account solely to authenticate his identity to clients and followers due to prior incidents involving impersonation and fake accounts contacting Plaintiff's clients. The verified status is not a claim of celebrity; it is a business-related identity-protection measure. The defamatory conduct nevertheless occurred publicly under Defendant Moezzi's commercial brand and impaired Plaintiff's personal well-being and professional credibility.

## IV. AMOUNT IN CONTROVERSY

Plaintiff seeks compensatory and punitive damages arising from intentional, reckless, and commercially amplified defamation, harassment, and reputational injury.

The amount in controversy plausibly exceeds **$75,000**, even under conservative estimates, based on:

- Loss of professional opportunities within a closed political market;

- Reputational injury caused by false criminal and ideological allegations;

- Emotional distress exacerbated by continued harassment and medical mockery;

- Ongoing publication of defamatory statements to a substantial audience;

- Potential punitive damages arising from reckless disregard for truth.

Plaintiff's reference to a higher damages figure reflects the outer boundary of potential recovery and punitive exposure, not a guaranteed or speculative demand. The jurisdictional threshold is satisfied regardless of the ultimate amount awarded.

---

## V. EXHIBITS AND RECORDS PRESERVATION

Plaintiff has preserved all evidence currently accessible to him, including public postings, private messages, and commercial branding materials related to the conduct at issue.

Plaintiff notes, however, that certain direct messages, replies, and interaction logs are no longer fully visible to Plaintiff due to Defendant Moezzi blocking Plaintiff on Meta-owned platforms. Upon blocking, portions of message history and interaction data become inaccessible to the blocked party, even though such records remain stored by the platform and may remain visible to the blocking party.

Accordingly, Plaintiff respectfully notes that a subpoena to **Meta Platforms, Inc.** may be necessary to obtain the complete and authoritative records of communications, including message content, timestamps, reply chains, and interaction metadata. Plaintiff raises this issue solely to preserve evidentiary completeness and does not allege spoliation at this stage.

Upon request of the Court, Plaintiff will begin uploading available exhibits in accordance with the Court's electronic filing limitations, which permit approximately three to four submissions per day, until all requested materials are filed.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and requests that the Court discharge the Order to Show Cause and permit this action to proceed.

Respectfully submitted,

/s/ **Phillip Ley**
 Phillip Ley, Pro Se
 19966 Lahser Rd
 Detroit, MI 48219
 Telephone: 757-528-6321

**Date:** December 15, 2025